IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SERIES 7 BROKER QUALIFICATION EXAM SCORING LITIGATION | MISC. ACTION NO. 06-355(JDB); MDL DOCKET NO. 1772 |
| THIS DOCUMENT RELATES TO: ALL CASES | |

## **CONSOLIDATED CLASS ACTION COMPLAINT**

1.  Plaintiffs bring this Consolidated Class Action Complaint pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated (the "Class") who, from October 1, 2004, through and including December 20, 2005 (the "Class Period"), took the Series 7 broker qualification examination ("Series 7") and were notified, in error, that they received a failing score. Additionally, upon information and belief, Electronic Data Systems Corporation ("EDS"), developed the software that malfunctioned, causing Plaintiffs to be informed that they had failed the Series 7 Examination when, in fact, they had passed.

2.  This Consolidated Class Action Complaint is purely an administrative device to streamline pleadings and motion practice, and is done solely for the convenience of the Court and the parties. This Consolidated Class Action Complaint does not affect any substantive or legal rights and does not supplant or supersede any complaint subject to these Multidistrict Litigation ("MDL") proceedings. This Consolidated Class Action Complaint incorporates all parties subject to this MDL proceeding, including those named in any and all of the subsequently-filed tag-along actions which are transferred to this Court.

3. This Complaint does not merge the above-referenced suits into a single action or alter the rights of any party in any respect. The filing of this Complaint shall have no effect upon applicable choice of law principles or on the subsequent remand of the cases back to their respective transferor courts. The Complaint does not waive or preempt or otherwise destroy any individual claims any Class Member may wish to assert, or has previously asserted on an individual basis in any jurisdiction. This Complaint shall not be given the same effect as an ordinary complaint but shall only be considered as an administrative device to aid efficiency and economy. *See, e.g., In re Propulsid Products Liability,* 208 F.R.D. 133, 141-42 (E.D. La. 2002).

4. Defendants' actions or omissions have damaged members of the Class, many of whom were just beginning their careers in the financial services industry. Such harm to Class members includes loss of employment, loss of wages, loss of employment benefits, loss of employment opportunities, and other damages.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2) since at least one Class Member has diverse citizenship from Defendants, and the matter in controversy exceeds the sum of $5,000,000.

6. On June 27, 2006, the Judicial Panel on Multidistrict Litigation entered a Transfer Order pursuant to 28 U.S.C. § 1407, transferring various related actions outside of the District of Columbia to this Court and assigning those cases to the Honorable John Bates for coordinated and consolidated pretrial proceedings with those actions already pending in this District. Thus, pursuant to that Order, venue is appropriate.

## PARTIES

7. Plaintiffs William Lowe, Timothy Wallin, Jason Plunkett, Jennifer Hester, Andrew Crabbe, Linda Cutler, Gueorgui Ivanov, Alex Ruimerman, Atal Varma, Nassim Ketita, Thomas Ribeiro, Jason Crockett, Maxwell Janis, and Frank Marino all took the Series 7 examination between October 1, 2004, through and including December 20, 2005, and were informed, falsely, that they failed the examination.

8. The NASD is a self-regulatory organization of securities firms with its headquarters in Washington, D.C. The NASD regulates the securities market and ensures that member firms abide by the rules of the NASD and the Municipal Securities Rulemaking Board, as well as federal and state securities laws and regulations. Defendant NASD also administers tests relating to securities broker licensing.

9. EDS is a publicly traded Delaware corporation located at 5400 Legacy Drive in Plano, Texas. EDS bills itself as a global technology service company. EDS specializes in developing, integrating and managing software for specific industries. In 2005 EDS had nearly $20 billion in revenue.

10. In October of 1998, the NASD and EDS announced a ten-year strategic alliance, with an announced value of $1.5 to $2.0 billion, whereby the NASD (and several of its subsidiaries) agreed to outsource to EDS certain aspects of its technology functions, including software development and maintenance. This outsourcing included technology and software used in the provision of the Series 7 Exam.

## FACTUAL ALLEGATIONS

11. The Series 7 exam is an entry-level examination administered by the NASD that qualifies individuals for registration with all self-regulatory organizations for the solicitation,

3

purchase, and/or sale of all securities products, including, among others, corporate securities, municipal securities, municipal fund securities, options, direct participation programs, investment company products, and variable contracts.

12. In order for an individual to engage in the solicitation, purchase, and/or sale of any securities products, he or she must pass the Series 7 exam. This test consists of approximately 250 multiple choice questions which are taken on a computer. The exam is scored immediately and the exam taker must receive a score of 70% in order to pass.

13. In order to take the Series 7 examination, an individual's employer must submit a Form U4. The Form U4 is used to inform the NASD of the States in which the individual taking the test wishes to be registered.

14. The Form U4 does not create a contractual relationship between the applicant and the NASD

15. To the extent the Form U4 is regarded as a contract, it is plainly a contract of adhesion and is unilateral.

16. None of the Plaintiffs or Class members had any bargaining power to negotiate any of the Form U4's terms.

17. The Series 7 exam is a standardized multiple choice exam. The NASD, and not EDS, was responsible for crafting the Series 7 exam. The NASD created the questions, created the list of multiple choice answers, and determined which of the possible answers was the correct answer.

18. The Series 7 exam is not graded on a subjective basis. Rather, immediately after the exam is taken, a software program (apparently developed more than 15 years before the Class

4

Period) electronically performed the ministerial task of adding up the number of correct and incorrect answers and calculating whether more or less than 70% of the answers were correct.

19.  During the Class Period, Defendants administered the Series 7 to approximately 60,500 individuals.

20.  During the Class Period, Defendants erroneously notified approximately 1,822 members of the Class that they had failed the Series 7.  Upon information and belief, these notifications occurred after each class member completed the exam and were based on mathematical calculations performed by the apparently over 15-year-old EDS software.

21.  During the Class Period, Class Members notified their sponsoring agencies or member firms of the erroneous test results.  Upon such notification, Class members suffered adverse employment consequences resulting in substantial damages.

22.  In January 2006, Defendants notified Plaintiffs, the members of the Class, and the sponsoring member firms that the prior exam results were in error and that all members of the Class had, in fact, passed the exam.

23.  On January 6, 2006, the NASD acknowledged in a news release that the incorrect failing score received by Plaintiffs was the result of a "software error" and apologized to the plaintiffs and their brokerage firms for the mistake:

> **NASD SAYS SOFTWARE ERROR IMPACTS CERTAIN SERIES 7 EXAM RESULTS**
>
> NASD today announces that it has begun notifying a limited number of individuals who took the Series 7 broker qualification exam between October 1, 2004 and December 20, 2005 to tell them that they incorrectly received a failing grade due to a software error…
>
> … … … …

>       Robert R. Glauber, Chairman and Chief Executive Officer of NASD was quoted in the NASD's News Release as stating: "We apologize for the problems this caused for the individuals and firms involved."

… … … …

24. The NASD went on to explain in their new release that the specific nature of the grading error related to incorrect weighting assigned to new questions:

>       The grading error relates to 213 questions that were introduced to the pool beginning in October of 2004. Because each Series 7 test is unique, a computer model is used to account for differences in test difficulty and to weight questions appropriately. The Series 7 passing score of 70 percent is subject to minor statistical adjustments based on the overall difficulty of each individual's examination. The error occurred in the weighting process in exams including one or more of the 213 questions.

25. The NASD disclosed that the technology system being used to administer and score the Series 7 was introduced 16 years earlier in 1990. Based on the error, the NASD claimed it would improve monitoring of the scoring and replace the technology used in scoring the Series 7 exam.

26. On January 7, 2006, an article issued by Bloomberg News quoted Nancy Condon, a spokeswoman for NASD, as stating that the scoring error stemmed from "human error" by EDS, the NASD's outsourced technology provider. "There was a coding error entered into the software." According to the article, a spokesman for EDS, Travis Jacobsen, confirmed the statement by Ms. Condon and explained that the grading software is "supposed to give a higher weighting to questions considered more difficult." Mr. Jacobsen claimed the error had been fixed.

27. In a Memorandum of Law in Support of the NASD's Motion to Dismiss filed in the *Schley* case that was pending before the United States District Court for the Western District of Wisconsin, the NASD described the error in the following way:

> The error was caused by a maintenance technician employed by defendant Electronic Data Systems Corp., (EDS), which provides technology services to NASD. The coding error, which affected a fraction of the questions in the test database, inadvertently switched two of the three difficulty variables. Because of the transposition, the testing software incorrectly calculated the overall difficulty of tests involving the affected questions, and incorrectly adjusted the candidates' scores. The effect on any individual scaled score was slight, but it caused 1,882 tests that should have received a marginally passing score to receive a marginally failing score instead.

28. At no time has the NASD ever provided any other public explanation for the erroneous scoring for the Series 7 exam. For example, the NASD has never publicly stated that the inaccurate grading resulted from any re-evaluation or reconsideration by the NASD of the propriety of the questions on the Series 7 exam or the correctness of the answers/weighting of each of the various questions on the Series 7 exam (all of which was determined by the NASD long before each Class Member took his or her exam). Indeed, the NASD has never publicly stated that the inaccurate scoring of the Series 7 exam was related in any way to *any* actions undertaken by the NASD or *any* judgment exercised by the NASD.

29. The NASD did state that it would take the appropriate steps to reflect that these individuals were indeed qualified to act as general securities representatives and would notify the sponsoring firms.

30. Upon information and belief, the alleged coding error by the EDS technician was the result of either (a) EDS using outdated technology with no ability to provide a cross-check to verify that the weighting coding for each version of the Series 7 exam was correct, or (b) the failure of EDS (for a period of approximately 15 months, if not more) to institute or perform a

quality-control procedure to verify that the weighting coding for each version of the Series 7 exam was correct.

31. Similarly, upon information and belief, the NASD failed to perform any supervision of EDS with respect to the coding of software as it related to the weighting of questions. The NASD also failed to perform any supervision of EDS regarding whether EDS had the capability or in fact utilized any capability to cross-check and verify that the weighting coding for each version of the Series 7 exam was correct. Nor did the NASD take any steps to perform its own cross-check (or insist EDS institute a quality-control mechanism) to verify the weighting coding for each version of the Series 7 exam was correct (for a period of approximately 15 months, if not more).

32. In litigation against the SEC, the NASD has emphasized that in the context of membership-related decisions, it is a private organization and not a state actor. Specifically, the NASD has claimed that without consultation with the SEC it makes numerous admission, retention, and rejection decisions about membership every day, and those decisions do not take on "the quality of government action."

33. The NASD has not claimed in any public statements that the grading error, of switching two of three difficulty variables, the selection of the software used in scoring the Series 7 exam or any other matter relating to the administration of the Series 7 exam was the product of consultation with the SEC.

34. Plaintiffs and Class Members have at this time no other knowledge of how the purported computer glitch occurred.

## CLASS ACTION ALLEGATIONS

35.  Plaintiffs bring this class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure in their representative capacity on behalf of themselves and a class (the "Class") of all persons similarly situated, defined as follows:

> All persons who took the Series 7 exam between October 1, 2004, through December 20, 2005, who were erroneously notified that they had received a failing score despite having passed the exam.

36.  The Class is numerous and joinder of all members is impracticable. Plaintiffs believe that at least 1,882 persons across the United States passed the test but were falsely informed that they had failed. The exact number and identities of the members of the Class are currently unknown to Plaintiffs but are readily ascertainable from appropriate discovery.

37.  There are questions of law and fact common to the Class. These common questions include, but are not limited to, the following:

    a.  Whether the software error reported by the NASD on January 6, 2006, in the scoring of the Series 7 exam, resulted in the Plaintiffs and the Class receiving a failing grade when, in fact, they had earned a passing grade;

    b.  Whether the same software error reported by the NASD on January 6, 2006, relating to the Series 7 exam affected the scoring for the Plaintiffs and the Class;

    c.  Whether Plaintiffs and the Class were the intended beneficiaries of the agreement between EDS and the NASD;

    d.  Whether the Defendants had a duty to accurately and reliably calculate and report the results of the Series 7 exam and knew, or should have known, that a

software error could impact the accuracy and reliability of the scoring for the Series 7 exam;

e. Whether the Defendants were negligent in failing to take steps necessary to ensure that the Series 7 exam would be accurately and reliably scored;

f. Whether the NASD was negligent in its representations to Plaintiffs, the Class and their sponsoring brokerage firms (and any other persons) by reporting failing exam scores when the Plaintiffs and the Class had earned a passing grade;

g. When the Defendants knew that a software error had impacted the accuracy and reliability of the Series 7 exam administered between October of 2004 and December of 2005; and

h. Whether, as a result of Defendants' misconduct, Plaintiffs and the Class are entitled to damages, equitable and other relief, and the amount and nature of such relief.

38. The questions of law and fact common to the Class predominate over any questions that may affect only individual members.

39. The claims of the Plaintiffs are typical of the claims of the Class because Plaintiffs and the other members of the Class were injured in the same manner by Defendants' conduct.

40. Plaintiffs will fairly and adequately protect the interests of the Class. There are no disabling conflicts of interest between Plaintiffs and the Class. Plaintiffs are members of the Class, possess the same interests, and suffered the same injuries as the Class members, making their interests coextensive with those of the Class.

41. The Class is represented by experienced counsel well-qualified to handle this case. This lawsuit will be capably and vigorously pursued by the Class representatives and their counsel.

42. A class action is superior to other methods for the fair and efficient adjudication of the controversy for reasons that include the following:

    a. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent and varying adjudications with respect to members of the Class that would establish incompatible standards of conduct for Defendant;

    b. Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and prosecution as a class action will eliminate the possibility of duplicative litigation; and

    c. A class action will provide redress for claims which otherwise would be too small to support the expense of individual, complex litigation.

43. Plaintiffs know of no difficulties that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### NASD'S Breach of Contract

44. The foregoing paragraphs are incorporated as if fully set forth herein.

45. By taking the Series 7 exam, an implied contract between the NASD and the Class Members was formed.

46. Pursuant to the implied contract, Defendant NASD assured the Class Members that the exams would be correctly scored and that it would provide the Class Members, and their employers, with accurate and correct scores.

47. The NASD breached this implied contract with the Class Members when Plaintiffs' exams were incorrectly scored and they were issued false failing scores.

48. As a proximate result of NASD's breach, Plaintiffs and members of the Class were damaged.

## COUNT II

### EDS' Breach of Contract

49. The foregoing paragraphs are incorporated as if fully set forth herein.

50. Upon information and belief, EDS had a contractual relationship and agreements with the NASD to provide information technology and related services, including software development and maintenance. Part of that agreement included developing and performing the functions relating to the automated scoring function of the Series 7 exam. Upon information and belief, EDS' relationship with the NASD did not include any responsibility for formulating the questions and multiple choice answers and determining what would be considered the correct answers to the Series 7 exam or how each questions would be weighted.

51. Plaintiffs and Class members were the intended third-party beneficiaries of the agreement between the NASD and EDS to perform the automated scoring function for the Series 7 exam.

52. EDS, in breach of its agreement to the NASD, failed to accurately and reliably develop and deliver an automated scoring function for the Series 7 exam.

53. As a proximate result of EDS's breach, Plaintiffs and the Class Members suffered damages as described herein.

## COUNT III

### (Negligence Against NASD and EDS)

54. The foregoing paragraphs are incorporated as if fully set forth herein.

55. The NASD and EDS owed a duty of care to Plaintiffs and Class Members.

56. The NASD and EDS were negligent in performing these duties, rendering the NASD and EDS liable for the following failures:

    a. Failing to properly design, manufacture, assemble, inspect and test the software used to score Series 7 exams;

    b. Failing to properly score the Series 7 exams;

    c. Failing to property supervise contractors such as EDS; and

    d. Failing to exercise due care to ensure that individuals do not receive erroneous test results.

57. As a proximate result of the NASD's and EDS's negligence, Plaintiffs and Class Members suffered damages, including adverse employment consequences.

## COUNT IV

### (Negligent Misrepresentation Against NASD and EDS)

58. The foregoing paragraphs are incorporated as if fully set forth herein.

59. Defendants recklessly or negligently misrepresented to Plaintiffs and Class Members, and their employers that they had failed the Series 7 exam.

60. Plaintiffs and Class Members relied on these misrepresentations when informing their employers or exam sponsors that they had failed the exam.

61. As a result of these misrepresentations, Plaintiffs and Class Members have incurred substantial damages arising out of being told erroneously that they failed the exam.

## PRAYER FOR RELIEF

WHEREFORE, on their own behalf and on behalf of the Class, Plaintiffs demand judgment as follows:

A. An Order determining that this action is a proper class action maintainable under Federal Rules 23(a) and (b)(3), and that Plaintiffs are proper Class representatives;

B. Costs and disbursements incurred by Plaintiffs in connection with this action;

C. Restitution and damages in an amount to be determined at trial;

D. Attorneys' fees and all costs of suit; and

E. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury with respect to all issues to triable.

Dated: October 31, 2006                            RESPECTFULLY SUBMITTED.


*Steven N. Berk* /cw
_____
STEVEN N. BERK  DC Bar No. 432870
CUNEO, GILBERT & LADUCA
507 C Street, NE
Washington, DC 20002
(202) 789-3960


GERALD E. MARTIN #20193
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, Tennessee 37201
615-244-2202

HERBERT MILSTEIN
COHEN, MILSTEIN,
HAUSFELD & TOLL, PLLC
1100 New York Avenue
Suite 500, West Tower
Washington, DC 20005
(202) 408-4600


STEVEN WEISS
SEEGER WEISS, LLP
One William Street
New York, NY 10004
(212) 584-0700

*Liaison Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of October, 2006, a copy of the foregoing <u>Consolidated and Amended Complaint</u> was served through the Court's CM/ECF system on all counsel registered with that system, and on the following counsel by U.S. Mail, First Class, postage prepaid:

John Balestriere
BALESTRIERE PLLC
225 Broadway, Suite 2700
New York, NY 10007

*Attorney for Andrew Crabbe and Linda Cutler*

Gerald Martin
BARRETT, JOHNSTON & PARSLEY
217 Second Avenue North
Nashville, TN 37201

*Attorney for Jason Plunkett*

John G. Richards
DAVIS, BUCCO & ARDIZZI
10 East 6th Avenue, Suite 100
Conshohocken, PA 19428

*Attorney for Mark Russo*

Joseph Tacopina
*Of Counsel*
ARTHUR L. AIDALA & ASSOCIATIES, PC
597 Fifth Avenue
New York, NY 10017

*Attorney for James Bruen*

Frederic S. Fox
KAPLAN FOX & KILSHEIMER, LLP
805 Third Avenue, 22nd Floor
New York, NY 10022

*Attorney for Alex Ruimerman*

William W. Graham
GRAHAM & ERVANIAN, PC
604 Locust Street, Suite 630
Des Moines, IA 50309

*Attorney for Christopher Wilson*

James F. Rittinger
SATTERLEE, STEPHENS, BURKE & BURKE
230 Park Avenue, Suite 1130
New York, NY 10169

*Attorney for The Thomson Corporation and Thomson Prometric, Inc.*

/s/   Steven N. Berk
STEVEN N. BERK

16